**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**FIDELITY NATIONAL TITLE
INSURANCE COMPANY,**

                **Plaintiff,**            3:12-cv-540
                                             (GLS/DEP)
                **v.**

**JP MORGAN CHASE BANK, N.A.,**
*as Indenture Trustee on behalf of
the Noteholders and Note Insurer
of ABFS Mortgage Loan Trust 2001-3,
Mortgage Backed Notes, c/o Ocwen
Loan Servicing, LLC,*

                **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Foley, Mansfield Law Firm            PETER B. LANGBORD, ESQ.
300 South Grand Avenue
Suite 2800
Los Angeles, CA 90071

**FOR THE DEFENDANT:**
Houser, Allison Law Firm             JILL S. DAVID, ESQ.
60 East 42nd Street
Suite 1148
New York, NY 10165

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Fidelity National Title Insurance Company commenced this action against defendant JP Morgan Chase Bank, N.A. asserting a claim of unjust enrichment stemming from JP Morgan's sale of real property in the Town of Harpersfield, New York. (*See* Compl., Dkt. No. 2.) Pending is JP Morgan's motion to dismiss. (*See* Dkt. No. 34.) For the reasons that follow, the motion is denied.

## II. Background[1]

On August 31, 2006, JP Morgan commenced a foreclosure action on a mortgage it held for the property located at 541 Bruce Hill Road, Harpersfield, New York ("the Property") against Linda and Roscoe Playford in a state court in Delaware County. (*See* Compl. ¶¶ 3-5.) While that action was pending, "a tax sale deed was recorded [on April 9, 2007] in favor of Delaware County in which the Property was conveyed to Delaware County as a result of the Playford's failure to pay taxes owed in 2005." (*Id.* ¶ 6.) Eight days later, JP Morgan obtained a judgment of foreclosure, which was recorded with the Delaware County Clerk's Office on April 25, 2007. (*See id.* ¶ 7.) Because of the tax lien, JP Morgan claims it was

---

[1] Unless otherwise noted, the allegations are drawn from Fidelity's Complaint and presented in a light most favorable to it.

2

unable to proceed with the mortgage foreclosure proceedings.  (*See* Dkt. No. 34 at 4.)  Accordingly, its loan servicer, Ocwen Loan Servicing, LLC, paid the outstanding taxes on July 11, 2007.  (*See id.*)

Instead of deeding the Property to JP Morgan, Delaware County conveyed the Property to Linda Playford, who, in turn, sold it to Eklund Farm Machinery, Inc. in December 2008.  (*See id.*; Compl. ¶¶ 8, 11.)  Meanwhile, with the tax lien lifted, JP Morgan conducted a foreclosure sale on October 10, 2007, conveyed the Property to itself, and thereafter, sold it to DT Schneider Development Corp. on August 8, 2011.  (*See* Compl. ¶¶ 9-10.)  To insure the validity of its title, DT purchased title insurance from Fidelity; a policy which DT filed a claim under after Eklund commenced an action in New York State Supreme Court to quiet title.  (*See id.* ¶¶ 10-12.)

Under the terms of its insurance policy, DT "tendered a claim" to Fidelity after it was served by Eklund.  (*Id.* ¶ 12.)  Ultimately, the state court granted summary judgment in favor of Eklund, and extinguished DT's claim to the Property.  (*See id.* ¶ 13.)  As a result thereof, Fidelity paid DT $72,000 to resolve the claim, and also incurred an additional $25,000 in expenses in the course of defending DT against Eklund's suit.  (*See id.* ¶ 14.)

3

Alleging that it is DT's subrogee, (*see id.*), Fidelity commenced the instant action in the Fourth Judicial Circuit in and for Duval County, Florida, claiming that JP Morgan was unjustly enriched in the amount $97,000, (*see* Dkt. No. 39 at 1-2; Compl. ¶¶ 14-16). On December 16, 2010, JP Morgan removed the case to the United States District Court for the Middle District of Florida, and thereafter, filed a motion to transfer the case to the Northern District of New York. (*See* Dkt. No. at 1.) JP Morgan's motion was granted on March 23, 2012 by United States District Judge Marcia Morales Howard. (*See id.* at 6.) Four days later, the case was transferred to this court. (*See* Dkt. No. 40.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

JP Morgan argues that Fidelity's Complaint should be dismissed because it failed to state an unjust enrichment claim and Fidelity cannot equitably subrogate its obligations to DT under the title insurance policy.

4

(*See* Dkt. No. 34 at 8-12.) Moreover, JP Morgan avers that there is no basis for Fidelity's claim of attorneys' fees. (*See id.* at 13.) Fidelity counters that its claim is sufficiently plead to survive JP Morgan's motion to dismiss. (*See* Dkt. No. 37 at 6-12.) The court agrees with Fidelity.

At this juncture, Fidelity's obligation is only to plead "factual content that allows the court to draw the reasonable inference that [JP Morgan] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, under New York law,[2] Fidelity must allege facts to establish that JP Morgan was enriched at its expense, and "equity and good faith conscience militate against permitting [JP Morgan] to retain what [Fidelity] is seeking to recover." *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 339 (2d Cir. 2011) (internal quotation marks and citation omitted). Here, Fidelity has met its burden by alleging, albeit succinctly, that JP Morgan's "purported" sale of the Property to DT resulted in a profit for JP Morgan, at its expense, and equity requires that JP Morgan be disgorged of those profits. (*See* Compl. ¶¶ 6-16.)

---

[2] As both parties' briefs contain citations to New York law, (*see* Dkt. No. 34 at 8-9; Dkt. No. 37 at 6), the court accepts JP Morgan's assertion that New York law should be applied to this diversity action. (*See* Dkt. No. 34 at 7-8.)

5

While the court is cognizant that Fidelity's claim is not flawless,[3] it is nonetheless unpersuaded by JP Morgan's arguments. First, JP Morgan's claim that the contract between Fidelity and DT precludes an unjust enrichment claim is misplaced. (*See* Dkt. No. 34 at 8-11.) It is true that quasi-contractual relief is "unavailable where an express contract covers the subject matter," *see, e.g.*, *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988), but that is not the case here since JP Morgan was not a party to the title insurance contract, (*see* Dkt. No. 34, Attach. 1 at 8-17.) Second, JP Morgan's discussion of equitable subrogation is, simply put, incomprehensible, as Fidelity, the insurer-subrogee, is not trying to recover from DT, the insured-subrogor.[4] (*See* Dkt. No. 34 at 11-12.) Finally, JP Morgan's assertion that Fidelity is not entitled to attorneys' fees bears on the question of damages, and as such, is premature. (*See* Dkt. No. 34 at 13.)

---

[3] If challenged, Fidelity may be required to substantiate its entitlement to the full $97,000, as the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a).

[4] Subrogation permits an insurer, after paying its insured's losses, to step into the shoes of the insured in order to recover from a third-party that is legally responsible for the loss. *See Teichman ex rel. Teichman v. Cmty. Hosp. of W. Suffolk*, 87 N.Y.2d 514, 521 (1996). Though the type of subrogation—*i.e.*, contractual or equitable—defines the scope of the right, Fidelity is entitled to seek reimbursement from JP Morgan, the party Fidelity alleges caused it to pay DT's claim. *See Fed. Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372 (1990).

6

In sum, Fidelity has satisfied the requirements of Fed. R. Civ. P. 8(a) by providing a "short plain statement of the claim showing that [it] is entitled to relief[,] and . . . a demand for the relief sought." Because Fidelity's claim is facially plausible, see *Iqbal*, 556 U.S. at 678, JP Morgan's motion to dismiss is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that JP Morgan's motions to dismiss (Dkt. No. 34) is **DENIED**; and it is further

**ORDERED** that JP Morgan file the appropriate responsive pleadings within the time allotted by the rules; and it is further

**ORDERED** that the parties notify Magistrate Judge Peebles in order to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 14, 2012
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

7